

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-23-2005

# In Re: Grand Jury

Precedential or Non-Precedential: Precedential

Docket No. 04-4136

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"In Re: Grand Jury " (2005). *2005 Decisions.* Paper 178.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/178

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 04-4136
_____

UNITED STATES OF AMERICA

Appellant

v.

JOHN DOE

Appellee
_____

Appeal from the United States District Court
For the District of New Jersey
D.C. No.: 04-mc-00106
District Judge: Honorable John W. Bissell, Chief Judge

_____

Argued: October 25, 2005

Before: SLOVITER, FISHER, and ROSENN, Circuit Judges

(Filed November 23, 2005)

Nicholas A. Marsh (Argued)
Peter R. Zeidenberg
United States Department of Justice Criminal Division
1400 New York Avenue, N.W.
Washington, D.C.   20005

Counsel for Appellant

Jeffrey D. Smith (Argued)
DeCotiis, Fitzpatrick, Cole & Wisler
500 Frank W. Burr Boulevard
Glenpointe Centre West
Teaneck, NJ 07666

Counsel for Appellee

_____

OPINION OF THE COURT

_____

ROSENN, Circuit Judge.

This appeal raises several serious questions concerning the time-respected role of privileged communication between client and attorney and the crime-fraud exception.  For almost four years now, the Government has had an active grand jury investigating certain activities of a federal law enforcement officer (hereinafter referred to as "Target").  The Government submitted details of the investigation to the District Court under seal through an *ex parte* affidavit of Peter R. Zeidenberg, a trial attorney of the Criminal Division of the

Public Integrity Section of the United States Department of Justice.  The Government sought the grand jury testimony of an attorney (hereinafter referred to as "Attorney") from whom Target sought legal advice in connection with an allegedly fraudulent, and likely criminal, course of conduct.  Specifically, the Government claims to have discovered evidence that Target proposed to engage in future criminal conduct, and that Target's purpose in consulting Attorney was to ascertain how best to conceal the illegal activity in which he planned to engage.

Attorney refused to respond to a grand jury subpoena, invoking the attorney-client privilege and moving to quash the subpoena.  The District Court for the District of New Jersey conducted a sealed hearing on the motion to quash.  The Government argued that the crime-fraud exception to the privilege applied to Target's conversations with the lawyer because they were in furtherance of Target's planned criminal activity.  The Government also opposed the motion to quash because certain conversations between the attorney and Target involved the participation and presence of a third party (hereinafter referred to as "Witness") that dispelled the privilege.

The District Court issued an oral ruling granting the motion to quash, concluding that the crime-fraud exception did not apply and that the presence of Witness did not dispel the privilege.  The Government timely appealed.  For reasons set forth below, we reverse and direct the denial of the motion to quash.

## I.

On appeal, the Government raises two issues of law: (1) that the District Court erred in applying a "cumulative evidence" standard to the motion to quash because the testimony sought was unnecessary for the grand jury in light of the testimony that it had already heard, and (2) the Court erred in interpreting the crime-fraud exception to require an attorney's knowing furtherance of the client's crime before the privilege can be pierced. We exercise de novo review over the issues of law underlying the application of the attorney-client privilege. In re Impounded, 241 F.3d 308, 312 (3d Cir. 2001). As to other issues, our standard of review of the application of that law is for abuse of discretion. Id.

## II.

The attorney-client privilege is a well-established historic rule which protects confidential communications between client and attorney. The privilege belongs to the client, not the attorney. The Supreme Court has long emphasized that the central concern of the privilege is to "encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." United States v. Zolin, 491 U.S. 554, 562 (1989) (quoting Upjohn Co. v. United States, 449 U.S. 383, 389 (1981)). The attorney-client privilege under federal law is the "oldest of the privileges for confidential communications known to the common law." Id.; State of Maine v. U.S. Dept. of the Interior, 298 F.3d 60, 70 (1st Cir. 2001). The privilege is not

4

lost if a client proposes a course of conduct which he is advised by counsel is illegal, but is extinguished when a client seeks legal advice to further a continuing or future crime. Zolin, 491 U.S. at 563. Because this ancient and valuable privilege is at the expense of the full discovery of the truth, it should be strictly construed. In re Grand Jury Proceedings, 219 F.3d 175, 182 (2nd Cir. 2000).

The common interest privilege allows for two clients to discuss their affairs with a lawyer, protected by the attorney-client privilege, so long as they have an "identical (or nearly identical) legal interest as opposed to a merely similar interest." F.D.I.C. v. Ogden Corp., 202 F.3d 454, 461 (1st Cir. 2000). The District Court found that Target and Witness shared a common interest, and therefore, the presence of Witness did not vitiate the attorney-client privilege. The Government has not challenged this finding of common interest on appeal and so we do not reach this issue

III.

**A.**

The Government contends that the District Court erred by focusing on whether Attorney's testimony would be necessary and cumulative. Although the Government must make a preliminary showing of relevance, necessity and significance are not part of the showing. In re Grand Jury Proceedings, 507 F.2d 963, 966 (3rd Cir. 1975); In re Grand Jury Matter, 906 F.2d 78, 88 (3d Cir. 1990) ("'Requiring the government to show both that the information it hopes to

5

obtain . . . is significant and that that information is unavailable from other sources would obviously impair the efficiency of grand juries.' . . . The grand jury cannot be constrained to acquire only the minimum evidence necessary to secure an indictment and is free to pursue cumulative leads.") (quoting In re Grand Jury Proceedings, 862 F.2d 430, 431-32 (2d Cir. 1988)).  The purpose of the grand jury is not to determine guilt or innocence of any person but to investigate and determine whether or not there is probable cause to prosecute a particular defendant.  United States v. R. Enters., Inc., 498 U.S. 292, 297-98 (1991).  It is the best judge of what evidence it deems necessary in the pursuit of its investigation.  "How much information is 'enough' is a matter for the judgment of the grand jurors and the prosecution rather than the court."  In re Grand Jury Matter, 906 F.2d at 88.

In stating its oral decision in this case, the District Court confined its statements to the conduct of the attorney and made no comments on whether the testimony of the attorney was cumulative or necessary.  These comments did not enter into the rationale of its decision, but came only after it had stated its decision and reasoning.  It then simply noted that it might have exercised its discretion to "strain a little further, so to speak, to find an exception" to the attorney-client privilege had the testimony been "truly critical."  The Court's comments did not constitute an abuse of discretion. We reject this contention of the Government as having no merit.

**B.**

We now turn to the Government's principal argument, the crime-fraud exception to the attorney client privilege rule. As the Supreme Court noted in Zolin, the attorney-client privilege is not without limitations. A principal and reasonable exception is that the privilege may not be used for the purpose of obtaining advice to promote crime or fraud. Although broad, the privilege does not allow a client to shield evidence of an intent to use an attorney's advice to further a criminal purpose.

The crime-fraud exception to the attorney-client privilege applies to any communications between an attorney and client that are intended "to further a continuing or future crime or tort." In re Impounded, 241 F.3d 308, 316 (3d Cir. 2001). In this analysis, "the client's intention controls and the privilege may be denied even if the lawyer is altogether innocent." In re Grand Jury Proceedings, 604 F.2d 798, 802 (3d Cir. 1979). The privilege is not lost if the client innocently proposes an illegal course of conduct to explore with his counsel what he may or may not do. Only when a client knowingly seeks legal counsel to further a continuing or future crime does the crime-fraud exception apply.

Although the District Court made no formal findings of fact as to the defendant's intent in consulting with his lawyer, the record is sufficient to support a finding that the Government met its burden of establishing a prima facie case to have the subpoena honored. A prima facie showing "requires evidence which, if believed by the fact-finder, would be sufficient to support a finding that the elements of the crime-fraud exception were met." In re Grand Jury

Subpoena, 223 F.3d 213, 217 (3d Cir. 2000) (quoting Haines v. Liggett Group Inc., 975 F.2d 81, 95-96 (1992)). Specifically, the Government must show that "the client was committing or intending to commit a fraud or crime" and that the consultation was "in furtherance of that alleged crime or fraud." Id.

The District Court made no findings of fact as to the intent of either Target or Witness and applied the wrong standard for the crime-fraud exception. A hypothetical introduced by the Court to discuss the case, which it stated was close to the actual facts, appears to assume that the client did not have an awareness of the illegality. The Court also stated this was not a situation "where advice was sought for and presumably utilized for [an illegal] purpose." An examination of the entire oral opinion, however, leads us to conclude that the Court improperly relied on whether the consultation assisted or furthered the crime. The Court should have focused on the intent of Target and Witness in their joint consultations with the attorney.

The record is reasonably clear as to the criminal intent of Target. It shows that Target was an experienced federal law enforcement officer, having served in that capacity for seven years. Witness' business was at the center of an investigation in which Target was responsible for coordinating Witness' activities as an informant. Target consulted Attorney in 1999, asking how he could invest in Witness' business. Witness later informed the Government that Target "sought [Attorney's] advice on how such an investment could be made – and, in particular, whether

8

[Target] could do the investment in [his] wife's name rather than in [Target's] name so that he could not be directly tied to the investment."

The investment would have been a criminal violation of 18 U.S.C. § 208 & 209 which bar any officer or employee of an independent agency of the United States, unless exempted or granted a special exception of the Government, from having a financial interest in any business or any arrangement concerning prospective employment, or from receiving salary or compensation from nongovernmental sources. We think it implausible that an experienced government agent like Target would not know that the proposed investment was a crime. In March 2000, Target made the investment in the business of Witness and received $1000-2000 per week for the duration of the investment. We conclude that the Government has made a prima facie case that the crime-fraud exception applies.

Although Target and Witness were involved in other illegal activities after the consultations, the Government does not contend that those activities were contemplated at the time of the meeting, nor that Target or Witness attempted to further those activities by the consultations in 1999.

III.

For the forgoing reasons, we reverse the order of the District Court and remand the proceedings to the District Court with instructions to deny the motion to quash the subpoena by the Government.