C.C. v Free Methodist Church-USA (2025 NY Slip Op 50866(U))

[*1]

C.C. v Free Methodist Church-USA

2025 NY Slip Op 50866(U)

Decided on May 28, 2025

Supreme Court, Monroe County

Schiano, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on May 28, 2025
Supreme Court, Monroe County

C.C., Plaintiff,

against
Free Methodist Church-USA, GENESIS CONFERENCE OF THE FREE METHODIST CHURCH (a/k/a Genesis Annual Conference), ALLEGANY CREEKSIDE CHAPEL (f/k/a and Successor in Interest to First Free Methodist Church of Allegany), Defendants.

Index No. E2021005588

For the Plaintiff
Meredith Abrams, Esq.
Weitz & Luxenberg, P.C.
700 Broadway
New York, New York 10003
For the Defendants
Ryan J. Lucinski, Esq.
Alexandria N. Rowen
Hodgson Russ, LLC
140 Pearl Street, Suite 100
Buffalo, New York 14202

Charles A. Schiano, Jr., J.

C.C. ("plaintiff") commenced this personal injury action pursuant to the Child Victims Act ("CVA") under CPLR 214-g against the Free Methodist Church-USA ("FMC"), the Genesis Conference of the Free Methodist Church ("Conference"), and Allegany Creekside Chapel ("Allegany") (collectively "defendants"). Plaintiff alleges she was sexually abused by the then Pastor of Allegany, Donald Butler ("Butler"), from approximately 1973 through 1975, when she was 13 to 15 years old. 
Preliminarily, it is noted that plaintiff has withdrawn her first, third, seventh and eighth causes action. Defendant's remaining claims allege the defendants were negligent, second cause of action; that Defendants were negligent in hiring Butler, fourth cause of action; that the District [*2]was negligent in the supervision and training of Butler, fifth cause of action; and, negligent in the retention of Butler, sixth cause of action. 
It is well settled that "the proponent of a summary judgment motion must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to demonstrate the absence of any material issues of fact" (Alvarez v Prospect Hosp., 68 NY2d 320, 324 [1986] [citations omitted]; see also Potter v Zimber, 309 AD2d 1276 [4th Dept 2003]). "Once this showing has been made, the burden shifts to the nonmoving party to produce evidentiary proof in admissible form sufficient to establish the existence of material issues of fact that require a trial for resolution" (Giuffrida v Citibank Corp., 100 NY2d 72, 81 [2003][citing Alvarez, 68 NY2d at 324]). "Failure to make such showing requires denial of the motion, regardless of the sufficiency of the responsive papers" (Winegrad v New York Univ. Med. Ctr., 64 NY2d 851, 853 [1985] [citations omitted]; see also Hull v City of N. Tonawanda, 6 AD3d 1142, 1142-43 [4th Dept 2004]). When deciding a summary judgment motion, the evidence must be viewed in the light most favorable to the nonmoving party (see Russo v YMCA of Greater Buffalo, 12 AD3d 1089 [4th Dept 2004]). The court's duty is to determine whether an issue of fact exists, not to resolve it (see Barr v County of Albany, 50 NY2d 247 [1980]; Daliendo v Johnson, 147 AD2d 312, 317 [2d Dept 1989]).
Plaintiff's fourth cause of action alleges Defendants were negligent in hiring Butler, the fifth cause of action alleges negligent supervision and training of Butler by the District, the sixth cause of action alleges negligent retention. Defendants argue that notice, actual or constructive, of Butler's propensity toward sexual abuse is a required element of each these remaining causes of action, and as defendant had no such notice, each of the remaining causes of action should be dismissed. 
"To establish a cause of action based on negligent hiring and supervision, it must be shown that 'the employer knew or should have known of the employee's propensity for the conduct which caused the injury'" (Jackson v New York Univ. Downtown Hosp., 69 AD3d 801, 801 [2d Dept 2010]; see Tucker v Kalos Health, Inc., 202 AD3d 1505, 1506 [4th Dept 2022]). "An employer may be liable for a claim of negligent hiring or supervision if an employee commits an independent act of negligence outside the scope of employment and the employer was aware of, or reasonably should have foreseen, the employee's propensity to commit such an act" (PB-20 Doe v St. Nicodemus Lutheran Church, 228 AD3d 1233, 1234 [4th Dept 2024] [quoting Walden Bailey Chiropractic, P.C. v GEICO Cas. Co., 173 AD3d 1806, 1806-1807 [4th Dept 2019]).
The employer's negligence lies in having placed the employee in a position to cause foreseeable harm, harm which would most probably have been spared the injured party had the employer taken reasonable care in making decisions respecting the hiring and retention of the employee (D.T. v Sports & Arts in Schs. Found., Inc., 193 AD3d 1096, 1096 [2d Dept 2021] [internal quotation marks omitted]; see Miller v Miller, 189 AD3d 2089, 2090-2091 [4th Dept 2020]).
(Shapiro v Syracuse Univ., 208 AD3d 958, 960 [4th Dept 2022]).
As to plaintiff's fourth cause of action, Defendants failed to establish prima facie entitlement to summary judgement "since they submitted no evidence as to the specific circumstances of [Butler's] hiring" (S.C. v NY City Dept. of Educ., 97 AD3d 518, 520 [2d Dept 2012]). In support of its motion, defendant submitted excerpts from the examination before trial [*3]of former Bishop of FMC, Supervisor of the Conference and Pastor, Richard Snyder ("Bishop Snyder"). According to Bishop Snyder, every individual seeking to become a pastor in FMC/Conference, must submit a written application, including references. Here, there was no written application in evidence or testimony from a person of knowledge that one had been received. Similarly, no evidence was submitted of a reference in connection to Butler's hiring by defendants. There is no claim that any records from that area were destroyed pursuant to any policy or that records as to Butler may have existed but were lost or destroyed. In fact, defendants claim that upon graduation from Asbury Theological Seminary ("Asbury") with a Master of Divinity degree, Butler received a recommendation from the Superintendent of the Conference, Reverend Carson Reber, in 1972 (see NYSCEF Doc. No. 36, Rowen Aff., Exhibit 10). 
The letter cited is not a letter written by Rev. Reber and is not a recommendation specific to the hiring process of Butler as a pastor within FMC or the Conference, but a letter of inquiry written by Butler to a Rev. John Hendricks of St. Petersburg, Florida, inquiring about a position with Rev. Hendricks as a youth assistant. 
In the letter, Butler states that Rev. Reber was recently in Wilmore, Kentucky (where Asbury is located) to attend the Ministers' Conference. The letter further states that he ("Butler") met with Rev. Reber to discuss employment opportunities and Rev. Reber mentioned that Rev. Hendricks, in St. Petersburg, Florida, was considering hiring a youth assistant. This is not a reference as to Butler's employment as a Pastor, nor is it part of the hiring process that brought Butler into defendants' employment, and defendants provide no explanation as to how this letter, not addressed to any of the defendants, led to his placement at Allegany. Defendants proffer no other evidence of an employment reference as to Butler, or as to any specifics as to the hiring of Butler for the position of Pastor, or any other position within the FMC or Conference. 
Defendants also produce a letter dated March 2, 1972 (NYSCEF Doc. No. 37, Rowen Aff., Exhibit 11) that is a response from Rev. Hendricks in St. Petersburg, Florida, and references a possible interview of Butler by Rev. Hendricks but does not actually set an interview. Rev. Hendricks encourages Butler to "follow various leads in the meantime." This is not evidence that FMC interviewed Butler or even set up an interview for the position of pastor, or relate in any manner to his employment by defendants, but does show records from the that period still exist (compare Nellenback v Madison County, 2025 NY LEXIS 507, *8 [Court of Appeals April 17, 2025][reasoning that because the Commissioner of Madison Cnty. Dept. of Social Services (DSS) testified in EBT that DSS records were routinely destroyed 10 years after child's 18th birthday, plaintiff's claim of constructive notice flowing from abuser/social worker's practice of not taking any notes of time with plaintiff, failed as the lack of records evidence does not show the abuser/social worker did not keep records initially]).
Consequently, even though former Bishop Snyder gave EBT testimony that a basic hiring process existed consisting of a required written application and including references, there is no evidence any part of the process was followed in Butler's case. Therefore, defendants have not shown prima facie entitlement to summary judgment as to the fourth cause of action alleging negligent hiring and the motion for summary judgment to dismiss the fourth cause of action is denied (Johansmeyer v New York City Dept. of Educ., 165 AD3d 634, 636 [2d Dept 2018] [summary judgment denied where defendant's own papers raised issue of fact as to appropriate measures implemented to evaluate intern's employment and fitness at the time intern was hired]; Chichester v Wallace, 150 AD3d 1073, 1075 [2d Dept 2017][ an employer may be liable under a [*4]theory of negligent hiring where the employer fails to conduct an adequate screening procedure]; Giangrasso v Assn. for Help of Retarded Children, 243 AD2d 680, 680 [2d Dept 1997] [defendant not entitled to summary judgment where questions of fact exist as to the adequacy of the screening process of new employees and whether defendant took appropriate measures to evaluate employee's fitness at the time of hiring]). 
Plaintiff's fifth and sixth causes of action allege negligent supervision and training and retention of Butler by defendants. As noted, defendants base their argument for summary judgment solely on their contention that they had no notice, actual or constructive, of Butler's propensity to sexually abuse miners. In support of their motion, defendant's submit plaintiff's examination before trial testimony wherein she states that prior to telling Allegany Youth Director Shirley Blinn about the abuse, which quickly resulted in Butler's removal, she told no one else about it, or had reason to believe that anyone else knew about the abuse (NYSCEF #30, Exhibit 4, Affirmation of Alexandria N. Rowen, January 31, 2025 ["Rowen Aff."], pp. 157). This establishes prima facie that defendants had no actual notice. 
As to constructive notice, defendant has not established prima facie entitlement to judgment as to the fifth and sixth causes of action because defendant's own submissions raise a question of fact. "In particular, given the frequency of the alleged abuse, which occurred over a three-year period [on defendants' property] the defendants did not eliminate triable issues of fact as to whether they should have known of the abuse" (MCVAWCD-DOE v Columbus Ave. Elementary Sch., 225 AD3d 845, 847-848 [2d 2024]; Stanton v. Longwood Cent. Sch. Dist., 233 AD3d 1010, 1014-1015 ["the district failed to establish, prima facie, that it lacked constructive notice of Faralan's abusive propensities and conduct, particularly given the frequency of the abuse, which occurred several times per week over an extended period in the same classroom and hallway during tutoring sessions and at times when others were present]). As explained in Stanton v Longwood Central School District, "[t]he very nature of constructive notice is that a problem has been visible and apparent for a sufficient length of time such that defendant should be charged with its knowledge . . . . the evidence submitted on the district's motion established a frequency of sexual abuse that occurred at times and in places such that a factfinder could determine that the district had constructive notice and that the district breached its duty of care to the plaintiff" (Stanton v Longwood Cent. Sch. Dist., 233 AD3d at 1015). 
Alternatively, assuming defendants established prima facie they did not have constructive notice, plaintiff's submissions in response raise a question of fact. Plaintiff submitted her examination before trial testimony (NYSCEF Doc. No. 47, Affirmation of Meredith Abrams, Esq., in Opposition to Defendants' Motion for Summary Judgment, March 3, 2025, ["Abrams Aff."], Exhibit 2 ["Ex. 2"]), that provides that after Butler surprised her with a hug and a kiss on the mouth behind a closed door in the nursery room at Allegany on December 23, 1973, (Abrams Aff., Ex. 2, pps. 84-85) matters quickly progressed to the point where Butler abused her multiple times a week in multiple locations on defendants' property (Abrams Aff., Ex.2 pps. 88-92, 94-96, 107, 120). The abuse having either occurred in the church itself, in Butler's office or the Sanctuary, or in Butler's home, which was owned and provided to Butler by Defendants (id., 120-122). Plaintiff described that within a few months of the first incident, Butler would sexually abuse her on Thursdays when she went to the Allegany church to clean after school, and when she went to Butler's defendants' owned residence across the street "sometimes two, three nights a week babysitting. Sometimes not three, sometimes more, sometimes less, it depended on her schedule [Mrs. Butler's]" (Abrams Aff., Ex. 2, p. 94 lns. 4-7). 
Further, Butler openly favored plaintiff and was known to spend time with her alone. Plaintiff's EBT testimony relates Allegany church youth group sledding events, held four or five times every winter, where Butler would ride alone with plaintiff on her sled, multiple times in a row, but never ride with any of the other youths, staff or adult church members present at the event (Abrams Aff., Ex. 2, pps., 226, 239-240). In addition, Butler, during the time when the abuse was occurring would pass notes to plaintiff immediately after church services or when plaintiff was at the church for youth events, or shake plaintiff's hand as the congregation departed after services in a special manner, caressing her palm with his middle finger during the handshake (Abrams Aff., Ex. 2 pps. 83-84, 226). At defendant's summer camp, which took place on defendant's property, Butler abused plaintiff in the woods around the camp every day when there "were people everywhere all the time" (Abrams Aff., Ex. 2, pps. 150-153; p. 153, ln. 15 [quote]). 
It was known that Butler remained in the residence when plaintiff went to his home to babysit his infant child while his wife was away at work. Shirley Blinn, the Allegany Youth Director, was aware of this and testified to comments made in her presence by W.C., a deacon/elder/board member of the Allegany Church at the time and second only to the pastor in importance at Allegany (NYSCEF Doc. No. 49, Abrams Aff., Ex. 2, p. 79, Exhibit 4, p. 174). W.C. openly remarked upon this and wondered why Paster Butler would have plaintiff, and other girls, at his house to babysit when he was home (Abrams Aff. Exhibit 4, pps. 77, 128-129).Defendants argue that these activities are not in anyway indictive of sexual abuse and therefore do not provide constructive notice. The court would disagree, "[A]n employer also fails in the duty of reasonable care when it knows of facts that would lead a reasonably prudent person to conduct an investigation which could have uncovered the information about the employee and fails to do so" (see NY PJI 2:240). Whether the facts discussed above should have prompted defendants to investigate Butler's relationship to plaintiff is a question for the finder of fact at trial (see BL Doe 5 v Fleming, 229 AD3d 1076, 1080-1081 [4th Dept 2024]["we conclude that there is a triable issue of fact whether defendant, in failing to investigate further, exercised the same degree of care and supervision over plaintiff that a reasonably prudent parent would have exercised" citing Doe v Lorich, 15 AD3d 904, 905 [4th Dept 2005]; Whitney, 8 AD3d 610, 611 [2d Dept 2004]). In BL Doe 5, the Appellate Division found an issue of constructive notice when defendant school district failed to investigate the student's precipitous drop in academic performance, which it linked to the duty of care under the applicable standard for schools and students (id.). 
Defendants also argue that FMC, a national organization, with offices located in Indianapolis, Indiana, was not on site to witness any of the events that plaintiff claims give rise to constructive notice. Similarly, the Conference, with its offices located in Rochester, New York, only visited each church in the Conference once per year. That is the Conference would only have gone to Allegany one time per year, and also could not have witnessed the events. Defendant also adds that Allegany did not have constructive notice because individuals present at the Church during the relevant time period were not aware of the abuse while it was ongoing. These arguments are not persuasive. 
A claim of negligent supervision includes, among other elements, duty, knowledge or notice, and foreseeability (Nellenback v Madison County, 2025 NY LEXIS 507, *7 - *8, 2025 Slip Op 02263 [Court of Appeals, April 17, 2025]). The knowledge or notice element is that the employer knew or should have known of the employee's tendency to engage in the tortious [*5]conduct. Defendant has cited no authority for this argument, and it does not appear to be a recognized defense to the claim of constructive notice that the employer was not physically present to witness events and circumstances that plaintiff alleges provided constructive notice. Whether an employer was on site to observe certain circumstances goes to the duty in such claims to use reasonable care in the supervision of employees. As noted elsewhere, defendants have clearly and categorically stated that they are not seeking summary judgment on the basis that any defendant here did not have a duty to plaintiff or that reasonable care was taken in meeting that duty. 
Finally, defendants raise, in their Reply brief (Memorandum of Law in Further Support of Defendants' Motion for Summary Judgment, March 3, 2025, NYSCEF Doc. No. 62), the argument that this Court may not interpret church policies and procedures in determining whether there was negligent hiring, supervision, training, or retention of plaintiff. This argument is improperly raised and is not relevant in deciding defendants' motion. 
Defendants appear to include this argument in response to Plaintiff's discussion of PB-20 Doe v St. Nicodemus Lutheran Church, 228 AD3d 1233 [4th Dept 2024]). That case reversed the trial court's dismissal of plaintiff's negligent retention, supervision, or direction claims. It examined the Evangelical Lutheran Church in America's (ELCA) Constitution and Bylaws and Continuing Resolutions and Synod of the Evangelical Lutheran Church in America's (Synod) Constitution to determine that there was a question of fact as to whether the ELCA and Synod owed a duty care to plaintiff (PB-20 Doe v St. Nicodemus Lutheran Church, 228 AD3d at 1233-1235).Dismissing plaintiff's argument citing St. Nicodumus, defendants correctly point out that they "did not move for summary judgment on whether they owed a duty to Plaintiff, rather, they moved for summary judgment because they were not on notice of Butler's alleged propensity for abuse" (Memorandum of Law in Further Support of Defendants' Motion for Summary Judgment, March 3, 2025, p.2 NYSCEF Doc. No. 62, p. 7). Accordingly, plaintiff's raising the issue of whether defendants' had a duty to plaintiff was not responsive to defendants' motion and irrelevant and therefore defendants' response is equally irrelevant.
To the extent Defendants assert this argument as an additional reason to dismiss plaintiff's complaint, it is improperly raised in Reply and should not be considered. Generally, new material may not be introduced in reply papers. "The function of reply papers is to address arguments made in opposition to the position taken by the movant, not to permit the movant to introduce new arguments or new grounds for the requested relief" (Allstate Ins. Co. v Dawkins, 52 AD3d 826, 827 [2d Dept. 2008]). To the extent the Court would consider it, the PB-20 Doe v St. Nicodemus Lutheran Church decision "rejected on the merits" the defendant's argument "that the imposition of liability for negligent hiring, retention, supervision and direction of the pastor is prohibited by the Free Exercise Clause" of the First Amendment to the United States Constitution (228 AD3d at 1238). This Court adheres to this determination and rejects any such argument by defendants here. 
Finally, as to Plaintiff's second cause of action of general negligence, the Court finds this cause of action to be duplicative of plaintiff's specific negligence causes of action in the fourth, fifth and sixth causes of action, and the second cause of action is dismissed.
Therefore, defendant's motion for summary judgment as to plaintiff's fourth, fifth and sixth causes of action is denied; and, granted as to the second cause of action. Plaintiff's first, third, seventh and eighth causes action are dismissed on plaintiff's voluntary withdrawal of those causes of action. 
Dated: May 28,2025
Rochester, New York
HON. CHARLES A. SCHIANO, JR.
Supreme Court Justice