Matter of Echtenkamp (2026 NY Slip Op 50031(U))

[*1]

Matter of Echtenkamp

2026 NY Slip Op 50031(U)

Decided on January 9, 2026

Surrogate's Court, Erie County

Mosey, S.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on January 9, 2026
Surrogate's Court, Erie County

In the Matter of the Estate of Karen Echtenkamp, a/k/a KAREN T. ECHTENKAMP, Deceased.

File No. 2023-3913/B

Jonathan Echtenkamp, PetitionerAppearing Pro SeRUPP PFALZGRAF, LLCAppearing for Objectant Debra WotherspoonAmanda L. Weber, Esq., of Counsel

Acea M. Mosey, S.

Decedent died at age 85 on April 12, 2023. Her husband had pre-deceased her and she was survived by three children: Debra, Martin and Jonathan. Decedent left a Will, dated February 10, 2006, which left her estate in equal shares to her three children, and nominated her son Martin as executor, with Jonathan nominated as successor executor.
In the last few years of her life, decedent's son, Jonathan, came to reside with, and to help care for, her. On November 23, 2021, decedent executed a power of attorney [the POA] designating Jonathan as her agent. That instrument was prepared by her attorney, Lindsay Pohlman, Esq., and executed under Pohlman's supervision.
Following decedent's death, her daughter Debra petitioned to become administrator CTA of this estate. Martin filed a renunciation of his right to serve as estate fiduciary, and Jonathan opposed Debra's appointment. On October 31, 2024, this Court denied Debra's petition and appointed the Erie County Public Administrator as fiduciary of this estate, and also directed Jonathan to file an accounting for his actions under the POA.
On December 20, 2024, Jonathan filed a petition to settle his accounting as decedent's agent. Debra filed objections to the accounting in January, 2025, an amended accounting was filed in March, 2025, and discovery then ensued. In April, 2025, Debra sought an Order from this Court directing Jonathan to produce all documents he had identified on a privilege log but had declined to produce.
As the discovery dispute moved forward with the submission of papers, Jonathan's attorney moved to withdraw as counsel. That application was granted by Order dated October 8, 2025, and Jonathan has proceeded in a self-represented posture since.
On October 23, 2025, this Court issued an Order, a copy of which is attached hereto as [*2]Appendix A, as follows:
"ORDERED that all documents set forth in the March 14, 2025, privilege log, a copy of which is attached hereto and made a part hereof, shall be provided to this Court on or before Friday, October 31, 2025, for this Court's in camera review . . . "Jonathan has submitted the documents listed in the privilege log, and I now find and decide as follows.(A)Jonathan's privilege log contains fourteen (14) documents, which Debra contends must be disclosed. The documents at issue are electronic communications between Jonathan, his former attorney in this accounting proceeding Keith Rosso, Esq., and attorney Pohlman (decedent's attorney who prepared the 2021 Power of Attorney and who worked with Jonathan while decedent was alive with respect to his actions as decedent's agent). The documents at issue are:
1. An email dated October 14, 2022, at 8:30 a.m., from attorney Pohlman to Jonathan regarding the parameters of the POA and Healthcare Proxy [the HCP], and legal advice;2. An email dated October 14, 2022, at 10:57 a.m., from Jonathan to attorney Pohlman [FN1]regarding the POA and the HCP, and issues Jonathan requested guidance on;
3. An email dated October 21, 2022, at 3:18 p.m., from attorney Pohlman to Jonathan responding to his October 14, 2022 email and giving advice about the POA and HCP;4. An email dated November 1, 2022, at 1:07 p.m., from Jonathan to attorney Pohlman, responding to her October 21, 2022 email regarding the POA and HCP [FN2];
5. An email dated January 25, 2023, at 10:43 p.m., from Jonathan to attorney Pohlman detailing matters Jonathan indicated might become contested legal issues going forward;6. An email dated January 26, 2023, at 8:43 a.m., from attorney Pohlman to Jonathan with legal advice about matters he had raised with her;7. An email dated March 10, 2023, at 11:31 a.m., from Jonathan to attorney Pohlman rearding possible on-going issues;[FN3]
8. An email dated March 10, 2023, at 2:00 p.m., from attorney Pohlman to Jonathan with legal advice about a POA issue;9. An email dated March 10, 2023, at 2:29 p.m., from Jonathan to attorney Pohlman about possible legal issues;10. An email dated March 10, 2023, at 2:31 p.m., from attorney Pohlman to Jonathan regarding legal issues;11. An email dated March 21, 2023, at 2:06 p.m., from attorney Pohlman to Jonathan regarding legal matters;12. An email dated March 22, 2023, at 1:55 p.m., from Jonathan to attorney Pohlman about legal matters;13. An email dated February 18, 2025, at 9:39 p.m., from attorney Pohlman to attorney Rosso and to Jonathan, regarding legal issues handled by attorney Pohlman with decedent and Jonathan;14. An email dated February 18, 2025, at 10:38 p.m., from attorney Pohlman to attorney Rosso regarding legal issues handled by Pohlman with decedent and Jonathan.

 (B)
"CPLR 3101 establishes three categories of protected materials ...: privileged matter, absolutely immune from discovery (CPLR 3101[b]); attorney's work product, also absolutely immune (CPLR 3101[c]); and trial preparation materials [CPLR 3101(d)(2)], which are subject to disclosure only on a showing of substantial need and undue hardship" (John Mezzalingua Assoc., LLC v Travelers Indem. Co., 178 AD3d 1413, 1417 [4th Dept 2019] [internal quotation marks and citations omitted]). "The burden of establishing a right to protection under these provisions is with the party asserting it— the protection claimed must be narrowly construed; and its application must be consistent with the purposes underlying the immunity" (id. at 1415).
"The attorney-client privilege shields from disclosure any confidential communications between an attorney and his or her client made for the purpose of obtaining or facilitating legal advice in the course of a professional relationship" (Ambac Assur. Corp. v Countrywide Home Loans, Inc., 27 NY3d 616, 623-625 [2016], citing CPLR 4503[a][1]). "The oldest among the common-law evidentiary privileges, the attorney-client privilege 'fosters the open dialogue between lawyer and client that is deemed essential to effective representation'" (id., quoting Spectrum Sys. Intl. Corp. v Chemical Bank, 78 NY2d 371, 377 [1991]). The proponent of the privilege "has the burden of demonstrating that the communication being claimed as privileged was a confidential communication predominantly of a legal character between an attorney and a client for the purpose of facilitating the rendition of legal advice or services in the course of a professional relationship and that the privilege was not waived" (Matter of Regen, 2018 NY Slip Op 32263[U], *9 [Sur Ct, Nassau County 2018], emphasis added; see also Charter One Bank, F.S.B. v Midtown Rochester, L.L.C., 191 Misc 2d 154 [2002]; Stanwick v A.R.A. Services, Inc., [*3]124 AD2d 1041, 1042 [4th Dept 1986]).
"Generally, communications made between a client and counsel in the known presence of, or in this case through, a third party are not privileged" (In re Acct. by BNY Mellon, N.A., 2014 NY Misc LEXIS 7543, *5 [Sur Ct, Suffolk County, Aug. 18, 2014], citing People v Osorio, 75 NY2d 80, 84 [1989]; see also Matter of Sosnow, 16 Misc 3d 1106[A], *1 [Sur Ct, Nassau County 2007]). "Exceptions exist . . . for communications made to counsel through a hired interpreter, or one serving as an agent of either the attorney or the client to facilitate communication" (In re Acct. by BNY Mellon, N.A., supra, *5 [Sur Ct, Suffolk County, Aug. 18, 2014], emphasis added). Statements made to agents of attorney or client retain their confidential or privileged character where presence of third parties is deemed necessary to enable attorney-client communication, and the client has a reasonable expectation of confidentiality (Matter of Nunziata, 72 Misc 3d 529, 535-36 [Sup Ct, Nassau County 2021], citing Ambac Assur. Corp. v Countrywide Home Loans, Inc, supra. For example, the presence of witnesses to the execution of a Power of Attorney does not waive the attorney-client privilege because the presence of these third-parties is deemed necessary to enable the attorney-client communication and the client would have a reasonable expectation that the confidential nature of her communication with her attorney would be maintained (id.).
"A power of attorney is an instrument by which one person appoints another as his agent" (Matter of Marden, NYLJ, May 3, 1995 at 4, col 6 [Sur Ct, Nassau County 1995], citing 3 Am Jur 2d, Agency, 322). Accordingly, where a valid Power of Attorney is in place, "[c]ommunications between an attorney and agent of the client are treated as though they were communications between the attorney and the principal (id., citing Rice, Attorney-Client Privilege in the United States, 4:2).
"Attorney work product under CPLR 3101(c), which is subject to an absolute privilege, is generally limited to materials prepared by an attorney, while acting as an attorney, which contain his or her legal analysis, conclusions, theory, or strategy" (Bent-Anderson v Singh, 209 AD3d 710, 711 [2d Dept 2022], quoting Geffner v Mercy Med. Ctr., 125 AD3d 802, 802 [2d Dept 2015]). "[T]he attorney work product privilege must be established by the party asserting it and includes things naturally considered the product of an attorney's work, such as interviews, statements, memoranda correspondence, briefs, mental impressions, personal beliefs" (Estate of Charles M. Kotick, 2008 NY Misc LEXIS 2597 [Sur Ct, New York County 2008], citing Victory Markets, Inc. v Purer, 51 AD2d 895 [1st Dept 1976]).

Documents 1 through 12
Here, Jonathan asserts attorney-client communication (CPLR 4503) as the basis for withholding documents numbered 1 through 12 of the privilege log, and he argues Documents 1-12 are protected from disclosure by attorney-client privilege.
Debra maintains that documents 1-12 are not covered by privilege. Debra argues (1) that attorney Pohlman is not a part of Jonathan's legal team and therefore the privilege was waived for those communications by way of Jonathan's presence, (2) that Jonathan was not attorney Pohlman's client with respect to the preparation and execution of the 2021 Power of Attorney and therefore privilege cannot attach, and (3) that the privilege was in fact waived by Jonathan's presence. Debra also urges that Jonathan's self-dealing is a conflict of interest which requires [*4]disclosure.[FN4]

A party seeking the protection of the attorney-client privilege bears the burden of establishing its applicability (John Mezzalingua Assoc., L.L.C. v Travelers Indem. Co., supra, at 1417). The thrust of Jonathan's attorney-client privilege claim is that the privilege attaches to Jonathan as decedent's agent under the POA as to his communications at issue here. Pohlman, who was decedent's attorney and was acting on decedent's behalf through her agent, Jonathan.
"[C]ommunications made to counsel through ... one serving as an agent of ... [the] client to facilitate communication, generally will be privileged" (Stroh v General Motors Corp., 213 AD2d 267, 268 [1st Dept 1995], quoting People v Osorio, 75 NY2d 80, 84 [1989]). Moreover, if a valid Power of Attorney is in place, "[c]ommunications between an attorney and agent of the client are treated as though they were communications between the attorney and the principal" (Matter of Marden, supra, citing Rice, Attorney-Client Privilege in the United States, 4:2).
Regarding documents 1-12, Jonathan was acting as decedent's agent in communicating with attorney Pohlman and, as such, those communications on matters relating to the POA and HCP, and actions taken or to be taken under them, are confidential (Matter of Marden, supra).
Debra argues, in the alternative, that Jonathan's alleged self-dealing is a conflict of interest that requires disclosure of those documents.
I find no merit to this argument.
Accordingly, I find that documents 1 through 12 are all covered by the attorney-client privilege and, as such, are all protected from disclosure.

Documents 13 and14
Jonathan claims attorney work product privilege (CPLR 3101[c]) as the basis for withholding documents numbered 13 through 14 of the privilege log [hereinafter, documents 13-14].
Jonathan, in opposing the Motion to Compel, argues that documents 13-14, as Attorney Pohlman's work product, are protected from disclosure by the attorney work product privilege.
"The burden of asserting and proving each element of privilege and a lack of waiver is upon its proponent" (Matter of Levine, 2017 NY Slip Op 30698[U], *9 [Sup Ct, Nassau County [*5]2017]). Jonathan's assertion of attorney work product privilege is based upon the fact that documents 13-14 contain attorney Pohlman's legal research, analysis, conclusions, legal theory, or strategy, and were drafted in her capacity as decedent's attorney directly relating to legal services provided to decedent.
Here, documents 13-14 were created by Pohlman after decedent's death. Documents 13-14 were sent to Jonathan and Jonathan's attorney at the time, Keith Rosso, Esq., who was representing Jonathan on claims brought against him by Debra for actions he took as decedent's agent (as reflect in his POA accounting).
In effect, documents 13 and 14 represent a recitation by Pohlman, the then-attorney for decedent and Jonathan, about actions taken during counsel's representation of both relative to the POA and HCP, as well as of related matters pertaining to decedent. These two documents were sent to Jonathan's attorney in the POA accounting proceeding and relate to Debra's claims of Jonathan's allegedly improper actions. As such, these two documents represent prior counsel explaining to "current" counsel why actions were taken and occurred as they did so that "current" counsel could properly defend Jonathan against Debra's claims of impropriety.
In this posture, both documents constitute attorney work product which is exempt from disclosure. In Matter of Wagenheim v. Office of Gen. Counsel, City Univ. of NY, 2024 NY Slip Op 31320(U), Sup. Ct. New York County, dec. March 5, 2024, the court quoted our Appellate Division's decision in Kenford Co. v. County of Erie, 55 AD2d 466, 470 [1977], as follows: "the phrase 'work product' embraces such items as 'interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, conducted, prepared or held by the attorney' ". See also, Hoffman v. Ro-San Manor, 73 AD2d 207, 211 [1980], where the court pointed out that material relating to, and reflecting, the attorney's "legal research, analysis, conclusions, legal theory or strategy" is what is encompassed by the attorney work product exemption.
Here, the successive representation of Jonathan by two attorneys — Pohlman first, then Rosso — on the same underlying legal matter(s) provides a "common legal interest" in which the communications at issue here are privileged and are not disclosable. See, e.g., Fox Paine & Co., LLC v. Houston Cas. Co., 51 Misc 3d 1212(A) [2016], by way of analogy.

(C)
For the reasons stated previously, I hereby deny Debra's motion to compel as to each document itemized as number 1 through 14 of the privilege log.
Finally, I hereby set this matter down for a status appearance on 
Tuesday, January 20, 2026, at 9:30 a.m. to take up and schedule anything else which is required to bring this proceeding to conclusion.
This decision shall constitute the Order of this Court and no other or further order shall be required.
DATED: January 9, 2026BUFFALO, NEW YORKHON. ACEA M. MOSEYSurrogate Judge

Footnotes

Footnote 1:There appears to be a typo in Jonathan's privilege log's descriptions of documents numbered 2, 4, and 7. The privilege log states that document numbered 2 is from Pohlman to Jonathan, whereas the email is actually from Jonathan to Pohlman.

Footnote 2:It should be noted that the privilege log states that document numbered 4 is from Pohlman to Jonathan, whereas document 4 is actually an email from Jonathan to Pohlman.

Footnote 3:The privilege log states that document numbered 7 is from Pohlman to Jonathan, whereas document 7 is an email from Jonathan to Pohlman.

Footnote 4:Debra has asserted additional, alternative arguments as to why the documents should be disclosed in her reply (Objectant's Memorandum of Law in Further Support of Her Motion to Compel Disclosure). To the extent Debra asserted additional and/or alternative arguments for the first time in her reply, these arguments are improperly raised and should not be considered at this time. Generally, new material may not be introduced in reply papers. "The function of reply papers is to address arguments made in opposition to the position taken by the movant and not to permit the movant to introduce new arguments in support of, or new grounds for the motion" (Matter of Gross, 35 Misc 3d 1229[A], 2012 NY Slip Op 50948[U], *6 [Sur Ct, Kings County 2012] [internal quotation marks and citation omitted]; see also CC v Free Methodist Church-USA, 86 Misc 3d 1204(A), 2025 NY Slip Op 50866[U], *5 [Sup Ct, Monroe County 2025], citing Allstate Ins. Co. v Dawkins, 52 AD3d 826, 827 [2d Dept 2008]). However, even if these new arguments were considered on the merits, I would find they are unavailing to require disclosure.